## HERBERT J. COOK v. METAL BUILDING PRODUCTS, INC. AND OTHERS.

211 N. W. 2d 371.

September 28, 1973—No. 43568.

*Popham, Haik, Schnobrich, Kaufman & Doty, Rolfe A. Worden, Gary R. Macomber, Grundhoefer & Luedtke,* and *Marvin L. Grundhoefer,* for appellant.

*Applequist, Nolan, Donovan, Larson, Barnes & Mathias* and *John M. Donovan,* for respondents.

Heard before Knutson, C. J., and Otis, Todd, and Olson, JJ.

OTIS, JUSTICE.

The issue here is whether a lien waiver executed by a subcontractor is supported by valid consideration when it is not delivered until a substantial part of the contract has been performed, and is not accompanied by payment to the subcontractor of what is then due and owing him. The trial court held the lien waiver valid and discharged the lien. We reverse.

This matter was submitted to the trial court on the pleadings and documentary evidence without any testimony. The facts, however, are not in dispute. The project out of which this litigation arose was the construction of a taconite pellet facility at Keewatin, Minnesota, by The Hanna Mining Company (Hanna) and National Steel Corporation in June 1965. The prime contract, which was entered with Midland-Ross Corporation (Midland), required the contractor to furnish the owners with lien waivers. Midland entered a subcontract with Metal Building Products, Inc. (Metal) on June 28, 1966. That contract also provided for lien waivers by Metal and its subcontractor, Crown Corr Erection, Inc. (Crown), plaintiff's assignor. The subcontract between Metal and Crown had been entered June 10, 1966. Significantly, it made no reference to a lien waiver procedure. Pursuant to its subcontract, Crown began work on June 20, 1966, and continued on the job under its contract until August 19, 1966, when Metal canceled the contract.

The lien waiver agreement between Metal and Crown out of which this litigation arose was dated June 29, 1966, but it was not submitted to Crown until August 2. Its pertinent provisions are these:

"* * * [I]t is hereby stipulated and agreed by and between the parties hereto, as part of the said contracts and for the considerations therein set forth that neither of the undersigned, Metal Building Products, Inc. nor Crown Corr Erection, Inc. nor any other person or firm employed by them under their contracts, shall file a lien for work done or materials furnished in connection with the above mentioned structure."

The agreement was executed by Crown on August 2 and received by Metal on August 4, 1966. After its contract was terminated on August 19, Crown filed a mechanics lien against Hanna's property because Metal was insolvent and Crown remained unpaid.

The prime contract required Midland to secure lien waivers, and the trial court was of the opinion that subcontractors were bound thereby. However, the trial court relied on an erroneous assumption of fact in accepting June 29 as the date when Crown received the lien waiver agreement from Metal. Either that date should have been July 29, the date of the letter transmitting the agreement to Crown, or there was a full month's delay in delivering the agreement to Crown since Crown did not receive it until August 2. In its memorandum the trial court stated:

"* * * The fact, therefore, that Crown Corr commenced work a few days before the No-lien Agreement was executed is of no significance in attempting to show failure of consideration. Obviously, Crown Corr anticipated this No-lien Agreement as a part of its sub-contract with Metal Building Products. This is supported by the fact that it furnished the signed agreement promptly one day later than the date of the contract between Midland-Ross and Metal Building Products."

From the record before us, we find no evidence that Crown anticipated an obligation to execute a no-lien agreement and, as we have indicated, the court's assumption in this regard was fallacious. If Crown and Metal had reached such an agreement before Crown commenced work, and the execution of it was sim-

ply a formality subsequently completed, the result we reach might have been different. In the present state of the record, we find no consideration for the lien waiver agreement between Metal and Crown to the extent it purports to operate retroactively. To the extent that Hanna or Midland relied on the agreement after delivery to Metal on August 4, they suffered a detriment which would constitute adequate consideration for the agreement as to work done between August 4 and August 19. By the same token, Crown may have realized a prospective benefit in executing the lien waiver agreement if it was an inducement for Metal to continue with Crown's contract.

If, upon a retrial, it develops that Crown proceeded with its contract on the representation it would execute a no-lien agreement in the future, and Midland or Metal relied on that understanding, their detriment would, as we have stated, constitute consideration. In the absence of such evidence, however, we hold that the delivery of the agreement on August 4 was without consideration as to services performed by Crown between June 20 and that date. Depending on how the facts are developed, it will be incumbent on the trial court to prorate the value of Crown's contract, which was for a total sum of $24,900, in order to allocate that portion which is subject to a lien and the portion of the work performed after August 4, which we hold is not subject to the lien.

The judgment is accordingly reversed and the matter remanded for a new trial.

Reversed and remanded.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.